**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| AIX ENERGY, INC. | CIVIL ACTION NO. 09-133 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| D&S OIL AND GAS OPERATORS, INC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Record Document 6) filed by defendant D&S Oil and Gas Operators, Inc. ("D&S"). D&S argues that plaintiff AIX Energy, Inc. ("AIX") has no cause of action for which relief can be granted because there is ongoing litigation in state court, as contemplated by the Escrow Agreement. See id. Thus, the complaint is premature and should be dismissed as a matter of law. See id. AIX opposed the motion. See Record Document 10. For the reasons which follow, the Motion to Dismiss is **DENIED**.

**I.    BACKGROUND.**

In April 2008, AIX and D&S entered into a Letter Agreement in which AIX agreed to purchase, and D&S agreed to sell, "all of [D&S's] right, title and interest in and to the certain properties located in the Oaks Field, Claiborne Parish, Louisiana," (the "Subject Interests") in exchange for payment of $8 million. See Record Document 1, ¶¶ 5-6. AIX attached a copy of the Letter Agreement to its complaint. See id., Exhibit 1.

Under the terms of the Letter Agreement, D&S warranted title to the interests in the Subject Interests to be conveyed pursuant to the Letter Agreement. See id., ¶ 7. AIX was not required to purchase the Subject Interests if, within 75 days of the date of execution of the Letter Agreement, AIX determined that any of the following conditions were not

satisfied:

    (a)    Seller owns good and merchantable title to the Subject Interests,
    (b)    Seller has good right and authority to sell and convey the Subject Interests to Buyer,
    (c)    The information provided by Buyer, including, but not limited to, production rates, sales revenues, taxes and lease operating expenses are materially incorrect.

See id., ¶ 8. An exhibit to the Letter Agreement further provided:

> [D&S's] warranty shall expire one (1) year from the date of sale and shall be limited to the pro-rated portion of the original sale price. If the interest conveyed proves to be less than that set forth in this agreement, [D&S's] liability shall be limited to the percentage of the sale price equal to the deficit percentage, and no more.

See id., ¶ 10. Pursuant to the Letter Agreement, the closing was to occur on July 15, 2008.

See id., ¶ 11. The parties later agreed to extend the closing date to July 18, 2008. See id., ¶ 12.

At the time of the July 18, 2008 closing, D&S was unable to, and did not, provide good and merchantable title to 14 interests totaling an undivided 12.157772% working interest in and to the Oaks Smackover "B" Sand Unit, including the oil and gas leases described in the Assignment (the "Deficiency Interests"). See id., ¶ 13. Thus, simultaneous to the execution of the Assignment, Bill of Sale and Conveyance of the undisputed property interests, the parties entered into an Escrow Agreement. See id., ¶ 14. AIX attached a copy of the Escrow Agreement to its complaint. See id., Exhibit 2.

The Escrow Agreement provided that the sale of the Subject Interests was accomplished simultaneously, and the purchase price for the Subject Interests of $8 million, less $972,621.60, had been paid to D&S. See id., ¶ 15. The $972,621.60 was placed into escrow, with Daniel Newell acting as the escrow agent. See id., ¶ 16. The

escrow amount was to be paid to D&S when and if D&S provided appropriate curative documents to show good and merchantable title to the Deficiency Interests. See id., ¶ 17. The Escrow Agreement specifically provided:

> Term of this Agreement. This Agreement shall terminate on January 16, 2009, or at an earlier date in the event all of the Escrow Amount has been disbursed to D&S and all accrued interest has been paid to D&S. However, on January 16, 2009, if a lawsuit has been filed and litigation ongoing as to any interest, this agreement shall remain in escrow until final judgment has been obtained. With the exception of the above, if there are any funds remaining in the Escrow Account as of January 16, 2009, AIX and D&S hereby instruct the Escrow Agent to deliver all of such funds, not subject to litigation, to AIX, whereupon this Agreement shall terminate and be of no further force and effect.

See id., ¶¶ 19-20 (Exhibit 2 at ¶ 5).

On or about January 7, 2009, Newell forwarded five Quitclaim Deeds to AIX related to five Deficiency Interests.[1] See id., ¶ 21. The value attributed to these Quitclaim Interests equaled approximately $360,382. See id., ¶ 22. AIX ultimately determined that the Quitclaim Deeds did not provide good and merchantable title. See id., ¶¶ 26-27. D&S acknowledged the defectiveness and indicated that it would correct the deeds. See id., ¶ 28.

AIX ultimately acquired the Deficiency Interest attributable to Paul A. Newell in a transaction separate from the Letter and Escrow Agreements. See id., ¶ 23. AIX alleged that the $32,529.86 value attributed to that interest, which is still included in the escrow amount, is due and owing to AIX. See id.

The Deficiency Interests not included in the Quitclaim Interests include Margaret

---

[1]The Quitclaim Deeds related to the following Deficiency Interests: Donald and Roberta Kneram, Frankie Chanler, Robert W. Cady, Joel M. Hedge, and Harris Michael Gross. See Record Document 1, ¶ 21.

Okarma, Dorothy N. Manziel, Nolen E. Manziel, Merigale Pyron, Dorothy S. Manziel, Victoria Manziel Heath, and James Lindstrom (collectively the "Manziel Interests"). See id., ¶ 24. The value attributed to the Manziel Interests equaled approximately $579,709.74. See id., ¶ 25.

Negotiations between the parties in relation to the Quitclaim Deeds and the Manziel Interests broke down. See id., ¶¶ 29-32.[2] On January 15, 2009, D&S, represented by Daniel Newell, filed two suits in state court in Claiborne Parish on the Deficiency Interests. See id., ¶ 33. The suits involved the Deficiency Interests relating to the Quitclaim Deeds and the Manziel Interests. See id., ¶¶34-36. AIX alleged that D&S filed the suits to extend the Escrow Agreement artificially. See id., ¶ 37. AIX further alleged that the Escrow Agreement terminated on January 16, 2009; thus, it demanded the release of the escrow amount. See id., ¶¶ 38-39. To date, AIX has received neither good and merchantable title to the Quitclaim Interests or the manziel Interest or any portion of the escrow amount. See id., ¶ 40.

In its complaint, AIX alleged: (1) D&S breached the Letter Agreement by failing to provide AIX with good and merchantable title to the Subject Interests by the closing on July 18, 2008; (2) D&S breached its warranty to AIX by failing to provide good and merchantable title to AIX for the Deficiency Interests; (3) D&S breached the Escrow Agreement by failing to join AIX in directing Daniel Newell to release the Escrow Amount, or any portion thereof, to AIX; and (4) D&S breached the Letter Agreement and Escrow Agreement in bad faith due to its actions in relation to the Manziel Interests and the

---

[2]AIX alleged that D&S admitted on or about January 14, 2009, that it had no basis to sue in relation to the Manziel Interests. See id., ¶ 29.

Quitclaim Interests. See id., ¶¶ 41, 43, 46, 48-52, 56-58.

## II. LAW AND ANALYSIS.

### A. Rule 12(b)(6) Standard.

In deciding a Rule 12(b)(6) motion to dismiss, the district court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). Notwithstanding, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." Id., citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. Yet, if the allegations set forth in the complaint, even if true, could not raise a claim of entitlement to relief, the court will expose the basic deficiency "at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007).

### B. Contractual Interpretation under Louisiana Law.

D&S argues that it did not breach the Letter Agreement or the Escrow Agreement, but rather was merely asserting a contract right to file suit in state court, as contemplated by the terms of the Escrow Agreement. See Record Document 6-2 at 1. Thus, according to D&S, the Escrow Agreement has not terminated and it remains in full force and effect pending the outcome of the state court litigation; AIX has no cause of action; AIX's complaint is premature; and AIX cannot take possession of the escrowed funds at this time. See id.

This case, and specifically the resolution of the instant motion, turns in part on the interpretation of contractual provisions contained in the Letter and Escrow Agreements. As this case is before this Court on diversity of citizenship subject matter jurisdiction, this Court, under Erie, is bound to apply Louisiana substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938). "[A] contract between the parties is the law between them and . . . courts are obligated to give legal effect to such contracts according to true [common] intent of the parties." Alco Collections, Inc. v. Poirier, 95, 2582 (La.App. 1 Cir. 9/27/96), 680 So.2d 735, 740, citing La. C.C. Art. 2045. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. C.C. Art. 2046. The words of a contract must also be given their general, ordinary and plain meaning. See La. C.C. Art. 2047; Beckham v. Hibernia Nat'l Bank, 27,638 (La.App. 2 Cir. 12/6/95), 665 So.2d 706, 708. If the wording of the contract "is clear and expresses the intent of the parties, the agreement must be enforced as written." Wallace v. First Assur. Life of America, 37,865 (La.App. 2 Cir. 12/10/03), 862 So.2d 374, 378.

"Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. C.C. Art. 2050. In case of doubt, a contractual provision shall be interpreted against the party who furnished its text. See La. C.C. Art. 2056. "In case of doubt that cannot be otherwise resolved, a contract must be interpreted against the obligee and in favor of the obligor of a particular obligation." La. C.C. Art. 2057. Further, under Louisiana law, contract must be performed in good faith. See La. C.C. Art. 1983; Brill v. Catfish Shaks of America, Inc., 727 F.Supp. 1035, 1039 (E.D.La. 1989) ("As a general rule, there is an implied covenant

of good faith and fair dealing in every contract.").

At this stage, the Court is required to assume that all of AIX's allegations in its complaint are true, even if such allegations are doubtful in fact. Of note, AIX has alleged that D&S admitted that it did not have a basis to sue in relation to the Manziel Interests. See Record Document 1, ¶ 29. AIX further alleged that D&S filed the state court lawsuits to extend the Escrow Agreement artificially. See id., ¶ 37. Finally, AIX asserted that D&S is not prosecuting the claims in either of the state court lawsuits in good faith as "ongoing litigation," as D&S failed to request service directly on any of the defendants in those lawsuits despite its knowledge of where those defendants might be found. See id., ¶ 51.

The Court also observes several ambiguities in Paragraph Five of the Escrow Agreement. Paragraph Five provided:

> Term of this Agreement. This Agreement shall terminate on January 16, 2009, or at an earlier date in the event all of the Escrow Amount has been disbursed to D&S and all accrued *interest* has been paid to D&S. However, on January 16, 2009, if a lawsuit has been filed and litigation *ongoing* as to any *interest*, this agreement shall remain in escrow until final judgment has been obtained. With the exception of the above, if there are any funds remaining in the Escrow Account as of January 16, 2009, AIX and D&S hereby instruct the Escrow Agent to deliver all of such funds, not subject to litigation, to AIX, whereupon this Agreement shall terminate and be of no further force and effect.

See id., ¶¶ 19-20 (Exhibit 2 at ¶ 5) (emphasis added). As argued by AIX, the manner in which the state court lawsuits were filed by D&S raises questions regarding whether the lawsuits are "ongoing" as contemplated by Paragraph 5. Moreover, the Escrow Agreement uses the term "interest," not the previously defined terms of "Subject Interests" or "Deficiency Interests." The term "interest" is not defined in the Escrow Agreement.

AIX's factual allegations, which the Court must accept as true, coupled with the

contractual interpretation principles applicable to the instant matter and a review of Paragraph Five of the Escrow Agreement, reveals that AIX's factual allegations are enough to raise a right to relief above the speculative level. The Motion to Dismiss must be denied.

### III. CONCLUSION.

Based on the foregoing, the Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Record Document 6) filed by D&S is **DENIED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 16th day of September, 2009.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE